UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEO BRYNES TRUST d/b/a MANTON INDUSTRIES, BIG TOP FLEA MARKET and HOWARD BRYNES, individually | : : : | |
| | : | |
| v. | : | |
| | : | |
| KEITH BRYNES, ATLANTIC ABATEMENT & CONSTRUCTION, INC., and ATLANTIC ABATEMENT CORPORATION | : : : | C.A. No. 19-00509-WES |
| | : | |
| v. | : | |
| | : | |
| MARK CARLSON, AMERICAN PRIDE INSULATION CO., INC., FRANCIS and JOCELYNNE DUBUQUE and SANTANDER BANK, N.A. | : : : : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States District Court

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) are three Motions to Dismiss the Third-party Complaint in this action. The movants are Third-party Defendant Santander Bank, N.A. (the "Bank") (ECF No. 59); Third-party Defendant Mark Carlson ("Carlson") (ECF No. 60); and Third-party Defendants American Pride Insulation Co, Inc. ("API"), and Francis and Jocelynne Dubuque (the "Dubuques") (ECF No. 61). Defendants/Third-party Plaintiffs object. (ECF Nos. 65, 66 and 67). A hearing was held on January 11, 2021. For the following reasons, I recommend that the Bank's Motion to Dismiss be GRANTED; Carlson's Motion to Dismiss be DENIED; and the API/Dubuques' Motion to Dismiss be DENIED.

**Background**

At its heart, this litigation is a family dispute about money. There are cross allegations of fraud and embezzlement between a father and son, and the son attempts to hold certain third parties

liable for the alleged malfeasance.  The primary parties are (1) Howard Brynes, ("Howard") individually and as Trustee of the Leo Brynes Trust; (2) Keith Brynes, ("Keith") Howard's son (and Leo's grandson); and (3) Mark Carlson, ("Carlson") apparently a personal friend and business associate of Keith and/or Howard who appears to have been employed as a bookkeeper for various of the Brynes' business entities over the years and possibly a shareholder of some.  Howard alleges that his son Keith embezzled money from him and his companies, and that Carlson assisted in, but did not personally benefit from, the thefts.   Howard does not sue Carlson for his alleged involvement, but Keith does in the Third-party Complaint.

The primary Complaint contains a Federal RICO Count (Count I), so this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  In response and pursuant to Rule 13, Fed. R. Civ. P., Keith counterclaims that he was the victim of fraud at the hands of Howard and Carlson.  Pursuant to Rule 14(a), Fed. R. Civ. P., Keith has also filed a third-party impleader action against Carlson primarily, but also the Bank, API and the Dubuques alleging, in part, that they ultimately have liability under theories of indemnity and/or contribution for any liability of Keith to Howard.  The issues presented by the instant Motions are whether those third-party claims are procedurally and jurisdictionally proper, and, if so, legally viable.

There are also two prior-filed pending Rhode Island Superior Court actions that involve certain of these parties and arguably related claims.  The first is Santander Bank, N.A. v. Atl. Abatement & Constr., Inc. ("AAC"), Mark Carlson and Keith Brynes, PC-2019-6824 (the "Bank Action"), which was initiated as a bank collection action on a loan and personal loan guarantees. In that action, AAC and Keith have also asserted a third-party claim against API for fraud by it, or its authorized representative-Carlson, related to the loan and loan proceeds.

The second is <u>Keith Brynes and AAC v. Mark Carlson</u>, PC-2020-04126 (the "McHenry Settlement Action").  This case relates to the commencement and settlement of a sexual harassment suit filed in this Court in 2016 (<u>Marian McHenry v. AAC and Keith Brynes</u>, CA No. 1:16-cv-00181-WES).  Keith alleges that Carlson fabricated the allegations in this federal court harassment suit, colluded with McHenry in its filing, retained defense counsel and settled the case without proper authority, forged his signature on a settlement agreement, and personally benefited from the settlement proceeds.

**Discussion**

**A.      Standard of Review**

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, <u>see</u> <u>Negron-Gaztambide v. Hernandez-Torres</u>, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, <u>see</u> <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002); <u>Carreiro v. Rhodes Gill & Co.</u>, 68 F.3d 1443, 1446 (1st Cir. 1995).  If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied.  <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of <u>Conley v. Gibson</u>, 355 U.S. 41, 44-45 (1957)).  "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." <u>Thomas v. Rhode Island</u>, 542 F.3d 944, 948 (1st Cir. 2008) (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 559).  <u>See also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

### B.    Subject Matter Jurisdiction

All the Third-party Defendants argue that this Court does not have subject matter jurisdiction over the claims brought against them in the Third-party Complaint.  It is undisputed that this Court has federal question subject matter jurisdiction over the primary Complaint since it contains a Federal RICO claim.  The primary Complaint also includes several related state statutory and common law claims brought here pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).  It is also undisputed that the Defendants/Third-party Plaintiffs have the procedural right under Rule 14(a) to implead "a nonparty who is or may be liable to [them] for all or part of the claim against [them]."  Rule 14(a) provides a narrow procedural mechanism which is not broadly intended to permit a party to bring everyone involved in a dispute before the same forum.  Rather, in order to properly plead a Rule 14 third-party claim, the party must have a claim seeking to pass along some or all of the liability claimed in the primary complaint.

Impleader is generally accomplished by way of asserting claims for contribution and/or indemnity.  Contribution applies where a defendant may bear some liability for a plaintiff's damages but claims that a third party also shares blame and should be held liable to contribute its share.  See R.I. Gen. Laws § 10-6-1, et seq. (providing for contribution between joint tortfeasors); see also Testa v. Winquist, 451 F. Supp. 388, 392 (D.R.I. 1978) (holding that Rhode Island's Joint Tortfeasor Contribution statute makes no "distinction between negligent or intentional torts").  On the other hand, indemnity seeks to shift liability from the defendant to a third party who has a legal

-4-

responsibility to take responsibility for it.  Indemnity generally has some independent legal footing such as contract, statute, agency, or other special relationship but can also be grounded in equity. See R&R Assoc. v. City of Providence Water Supply Bd., 724 A.2d 432, 434 (R.I. 1999) (outlining the elements of a claim for equitable indemnification).

Here, Defendants/Third-party Plaintiffs seek to implead Third-party Defendants through Count X which is entitled "Indemnity and Contribution – as to all Third Party Defendants."  They reference the allegations against them in the primary Complaint and incorporate the averments pled in support of Counts I-IX of the Third-party Complaint.  Count X alleges that Carlson conducted the fraudulent financial transactions charged in the primary Complaint and did so for his own benefit, and also under the direction, and for the benefit of, API and the Dubuques.  The Bank is not specifically mentioned in Count X but is sued for negligence in Count VIII related to the fraudulent banking transactions its agent allegedly allowed Carlson to transact and sued in Count IX for aiding and abetting Carlson's allegedly fraudulent acts.  The Defendants/Third-party Plaintiffs allege in Count X that the damages they have incurred, and shall continue to incur, were "proximately caused" by Third-party Defendants, and they seek to be "indemnified" for any sums paid in relation to the claims in the primary Complaint.

Third-party Defendants initially argue that the Court "cannot acquire subject matter jurisdiction through supplemental jurisdiction because there is no count in the Third Party Complaint asserting that [they are] liable for the one federal claim in the Complaint, and there is no right to indemnity or contribution from 'RICO based liability.'"  (ECF No. 59-1 at p. 2).  They are correct on the latter point regarding RICO indemnification (and it is uncontroverted by Third-party Plaintiffs).  See Friedman v. Hartmann, 787 F. Supp. 411, 415 (S.D.N.Y. 1992) ("The text of the RICO statute does not explicitly permit defendants in civil RICO actions to obtain either

-5-

contribution or indemnity from third parties, and courts have consistently held that no such right exists."); <u>see also</u> <u>React Presents, Inc. v. Eagle Theater Entm't, LLC</u>, Case No. 16-13288, 2018 WL 3859888 at *4 (E.D. Mich. Aug. 10, 2018).

However, they are off the mark on the former point.  There is nothing in Rule 14 that limits impleader in a federal question case to claims for secondary liability only on that federal claim. Here, the primary Complaint also contains several supplemental state law claims that are properly before the Court and trigger at least facially plausible third-party claims for indemnification or contribution as a matter of state law.  Third-party Defendants base their argument heavily on <u>CFSC Consortium v. Ferreras-Goitia</u>, 198 F. Supp. 2d 116, 127 (D.P.R. 2002) and argue that proper subject matter jurisdiction requires some "logical dependence" between the jurisdiction-granting claim and the ancillary, non-federal claims.  Based on <u>CFSC</u>, they argue that dismissal of the state law claims for indemnification and contribution is required because they have no "logical dependence" on the jurisdiction-granting Federal RICO claim as a matter of law as there is no legal right to indemnity or contribution for such a claim.  I disagree.  In the <u>CFSC</u> case, the Court wrestled with the issue of whether it retained subject matter jurisdiction over a third-party complaint involving non-diverse parties after the original claim establishing federal diversity jurisdiction was settled and dismissed.  It held that the dismissal of the diversity-based claim required dismissal of the non-diverse, third-party complaint without prejudice due to lack of subject matter jurisdiction.  However, the <u>CFSC</u> case is not controlling because it is distinct from this one in one key respect – the jurisdiction-granting claim in this case (Federal RICO) has not been dismissed and thus this Court retains subject matter jurisdiction over the primary Complaint. As noted previously, there is nothing in Rule 14 that limits impleader as suggested by Third-party Defendants, and they have provided no relevant precedent to support their argument.

Alternatively, Third-party Defendants argue that even if the third-party claims in Count X for Indemnification and Contribution are permissible under Rule 14, this Court should employ its discretion under 28 U.S.C. § 1367(c) and decline to exercise supplemental jurisdiction over the other state law claims in the Third-party Complaint.  Again, I disagree.  The Supplemental Jurisdiction statute (28 U.S.C. § 1367(c)) outlines the circumstances when the Court may decline to exercise such jurisdiction, i.e., (1) when the claim(s) involves novel or complex issues of state law; (2) when the claim(s) substantially predominates over the federal claim; (3) when the Court has dismissed all of the claims over which it had original jurisdiction; and (4) when exceptional circumstances present compelling reasons for declining jurisdiction.  Neither circumstance (3) nor (4) is present here, and circumstances (1) and (2) do not support dismissal of the supplemental state law claims in issue.  Although this case is factually complex, the case involves fraud and embezzlement claims that appear neither novel nor complex on their face.  Also, although the state law claims outnumber the single Federal RICO claim, those claims are sufficiently interrelated to constitute the same case or controversy.

Having determined that the Third-party Complaint is procedurally proper and within the subject matter jurisdiction of this Court, I will turn to the other substantive challenges to the Third-party claims.

C.     **Prior Pending Action**

Carlson, API, and the Dubuques argue that this Court should exercise its discretion and dismiss this Third-party Complaint as to them in favor of prior-filed state litigation pursuant to the prior pending action doctrine.  The prior pending action doctrine is discretionary and permits a court to dismiss an action in favor of a previously-filed action where the two actions share common parties and issues.  See Quality One Wireless, LLC v. The Goldie Grp., LLC, 37 F. Supp. 3d 536,

541-542 (D. Mass. 2014).  The doctrine is grounded in concerns for judicial efficiency and the risk of inconsistent judgments.  Id.  It requires an identity of issues and a finding that the controlling issues in the second-filed action will necessarily be determined in the earlier-filed action.  Id.

Here, the application of the doctrine does not support discretionary dismissal in deference to either of the prior pending state cases.  First, Carlson bases his argument on the McHenry Settlement Action described above in which he is the primary defendant.  Although the parties are the same and there are similar allegations of fraud, the McHenry Settlement Action is much narrower than this case and focuses on the discrete matter of Carlson's role in the allegedly fraudulent filing and settlement of the McHenry suit in federal court.  That matter is not mentioned in the Third-party Complaint in this case, and I recommend that it be construed to exclude that narrow claim.  There are not overwhelming concerns for judicial efficiency implicated by these two actions proceeding simultaneously since the former is much narrower than the latter, and the primary Complaint in this action is still going to proceed, in any event, and ultimately result in adjudication of the broad-ranging allegations and counter-allegations of fraud presented.  There is also no significant risk of inconsistent judgments because of the difference in the scope of the fraud allegations in issue.  Thus, I recommend that the Court deny Carlson's request to dismiss this third-party action in favor of the prior pending McHenry matter.

Second, API and the Dubuques base their argument on the Bank Action described above. That Action was initiated by the Bank against Keith and AAC to collect on a $40,000.00 loan. Keith and AAC then filed a third-party action bringing API into that suit alleging, inter alia, fraud related to the loan and loan proceeds.  (ECF No. 61-2).  In particular, Keith and AAC allege that Carlson, acting as API's authorized representative, fraudulently "tricked" them into taking the loan and then misappropriated the loan proceeds for the benefit of API.  Id.  That loan issue is not

mentioned in the Third-party Complaint in this case, and I recommend that it be construed to exclude that narrow claim.  As above, the prior pending action relied upon is much narrower than the third-party claims brought against API and the Dubuques in this action.  Accordingly, and for the same general reasons discussed above regarding the McHenry action, I recommend that the Court deny API and the Dubuques' request to dismiss these third-party claims in favor of the prior pending Bank Action.

> ### D.     UCC Preemption

Next, the Bank asserts that Counts VIII and IX for Negligence and Aiding and Abetting are preempted or displaced by the Uniform Commercial Code (the "UCC") and must be dismissed. The Bank contends that the UCC preempts any non-UCC claims concerning "negotiable instruments," and that Counts VIII and IX are plainly premised upon its alleged mishandling of checks, which are negotiable instruments under the UCC.  (ECF No. 59-1 at p. 20-21).  Third-party Plaintiffs object, arguing that the unique facts pled in their Complaint take their claims outside of the UCC's scope.

The Bank sets forth several arguments in favor of dismissal, each of which is contested by Third-party Plaintiffs.  First, the Bank urges the Court to find that R.I. Gen. Laws § 6A-3-420, the UCC's conversion cause of action, applies to the allegations made in Counts VIII and IX of the Third-party Complaint.

The Bank also contends that the Negligence and Aiding and Abetting claims fail because the UCC preempts an action that would "circumvent a provision, purpose or policy" of the UCC. It asserts that Counts VIII and IX circumvent the UCC's statute of limitations, as well as the damage limitations placed on conversion actions.  Finally, it argues that these claims are preempted by the UCC because they are inconsistent with Article 4A's duties and liability limitations.

The Bank specifically relies upon <u>Patco Constr. Co. v. People's United Bank,</u> 684 F.3d 197, 199 (1st Cir. 2012) and argues it is controlling because the Court of Appeals there declined to permit an analogous negligence claim to be asserted against a bank and held that the claim must be made exclusively under the UCC.  In response, Third-party Plaintiffs contend that <u>Patco</u> is not inconsistent with their position because that Court emphasized the unique facts before it in finding that common law claims were barred to the extent that they created rights, duties, and liabilities inconsistent with Article 4A.  (ECF No. 66 at p. 26).  Third-party Plaintiffs posit that <u>Patco</u> is not controlling here because the UCC does not provide a remedy for the claims made in their complaint.  They assert that "[t]here is no comprehensive remedy under the UCC that would offer the Third Party Plaintiffs the relief sought in their Third Party Complaint."  <u>Id.</u> at p. 27. They further assert that when the Court considers the unique facts pled in their Third-party Complaint, the UCC does not preempt their claims because they have alleged that the Bank here knew, or should have known, that the deposits and transfers Carlson made were part of an embezzlement scheme.  <u>Id.</u> at p. 30.

I have considered the arguments set forth by both parties, and, although I am mindful of the duty under Rule 12(b) to accept well-pleaded facts as true and analyze those facts in the light most favorable to Third-party Plaintiffs, I must also be mindful that the Third-party Complaint as to the Bank is thin on facts and thick with conclusions.  <u>Canman v. Bonilla</u>, 778 F. Supp. 2d 179, 186 (D.P.R. 2011) citing <u>Iqbal</u>, 556 U.S. at 678.  (A Complaint "that offers 'labels and conclusions' or 'A formulaic recitation of the elements of a cause of action will not do.'  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'")

Third-party Plaintiffs allege that Carlson was the bookkeeper and financial manager of Atlantic Abatement, Manton Industries, Big Top, and American Pride, and fraudulently

commingled the finances of these entities.  They allege that he conducted financial transactions at the Bank on behalf of these entities including the deposit of checks and the transfer of funds between business accounts.  They also allege that the Bank was "aware of negative balances and the bouncing of checks by Carlson for each of the various bank accounts with the different entities…." (ECF No. 37 at p. 10).  These allegations allege nothing more than typical commercial banking transactions, and the only irregularity alleged is that Carlson was able to deposit checks made payable to Atlantic Abatement into the bank accounts of the other entities.  They then claim, "upon information and belief" only, that the Bank was aware, or ought to have been aware, of Carlson's alleged fraud.  Finally, they leap to the conclusion that the Bank "conspired, aided and abetted Mr. Carlson, knowingly, willingly and intentionally, to cover up Mr. Carlson's fraud and embezzlement by assisting Mr. Carlson in making such deposits and stealing such funds from Atlantic Abatement." (ECF No. 37 at p. 33).  These latter allegations are simply not supported by any well-pleaded facts.

Rhode Island has a well-established statutory scheme governing checks and fund transfers via the UCC, and the Bank persuasively argues that the UCC preempts any non-UCC claims based on the claimed mishandling of checks and impermissible fund transfers.  The Bank has presented clear authority holding that the UCC displaces non-UCC causes of action inconsistent with Article 3 and 4A, as well as the policies of finality of these transactions embodied in the statute of limitations and the cap on potential exposure via the damage limitations contained therein.

First, Article 3 of the UCC governs a bank's processing of checks. R.I. Gen. Laws § 6A-3-102.  Rhode Island's adoption of the UCC includes the cause of action of conversion against a bank when it "makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."  R.I. Gen. Laws § 6A-3-420(a).  Despite Third-party

Plaintiffs' attempt in their Objection to distance their claims from the UCC, the UCC's conversion provisions are plainly applicable.  It is clear that the Third-party Complaint claims that the Bank converted Atlantic Abatement's funds by wrongfully allowing Carlson to endorse and deposit checks made payable to Atlantic Abatement into non-Atlantic Abatement accounts. Despite Third-party Plaintiffs' arguments to the contrary, Article 3 of the UCC sets forth a comprehensive statutory scheme which governs the claims, defenses, etc. arising from the alleged mishandling of checks by banks.  In their Objection, Third-party Plaintiffs overlook the UCC provisions governing the negotiation, transfer, and endorsement of checks (R.I. Gen. Laws § 6A-3-201, et al.) and the binding nature of signatures of authorized representatives on those checks.  See R.I. Gen. Laws § 6A-3-402.

Because the UCC provisions, including the conversion cause of action, apply to the Bank under the facts alleged, it preempts or displaces the common law negligence and aiding and abetting causes of action against the Bank based on the alleged mishandling of checks.  See Dean Commonwealth Bank & Tr. Co., 434 S.W.3d 489, 506-510 (K.Y. 2014) (holding that aiding and abetting claim based on mishandling of checks is preempted by UCC); Marano v. RBS Citizens Fin. Grp., Inc., No. 12-639ML, 2013 WL 639155, *3-5 (D.R.I. Feb. 20, 2013) (adopting magistrate judge's recommendation that UCC's conversion provision displaces negligence and breach of contract claims against bank and citing relevant case law); Ciccone v. Pitassi, No. Civ.A. PB 97-4180, 2004 WL 2075120 at *9 (R.I. Super. Ct. August 13, 2004/Silverstein, J.) (holding that UCC's conversion provision preempts negligence claim against bank for mishandling checks when the bank allegedly deposits the checks impermissibly).  Thus, I recommend that Third-party Plaintiff's aiding and abetting and negligence claims based essentially on the Bank's claimed

mishandling of checks be dismissed because such claims are displaced by the UCC and would directly undermine the policies of certainty and finality embodied therein.

Similarly, the Rhode Island General Assembly has enacted a comprehensive scheme to govern the funds transfer process and provides that Article 4A is the "exclusive" source for funds transfer law.  Here, Third-party Plaintiffs' aiding and abetting claims circumvent Article 4A's "limitation on liability" and implementation of "duty to object" upon the account holder.  See Patco Constr. Co. v. People's United Bank, 684 F.3d 197 (1st Cir. 2012) (negligence claim displaced by Article 4A); Allied Contracting II Corp. v. CTBC Bank Corp. (USA), No. 653443/2018, 2020 WL 2135801, *2-7 (N.Y. App. Div. May 2, 2020) (granting motion to dismiss aiding and abetting claims within electronic transfer of funds process); Hunter v. Citibank, N.A., NO. C 09-02079 JW, 2010 WL 2509933 *5-7) (N.D. Cal. Feb. 3, 2010) (same); R.I. Gen. Laws § 6A-4.1-505 (one-year statute of limitations applies when a bank transfers funds from a customer's account, the customer receives notice, and the customer does not object to the debiting of the account within one year); R.I. Gen. Laws § 6A-4.1-204 (implements a "duty" for a customer to report funds transfers that are either purportedly unauthorized or erroneous).  If Third-party Plaintiffs could advance aiding and abetting claims extraneous to the UCC, the claims would circumvent the finality of the transactions embodied in the UCC's one-year statute of limitations and the account holder's duty to report to the Bank.  In their Objection, Third-party Plaintiffs argue unpersuasively that their asserted claims do not create rights, duties, and liabilities inconsistent with the UCC.  Accordingly, I recommend that the Court also dismiss the negligence and aiding and abetting claims that are based on the Bank's allegedly impermissible transfer of funds.

Finally, since I am recommending dismissal of Counts VIII and IX, it is necessary to revisit the legal viability of Count X.  As previously stated, Rule 14 impleader is limited to claims that a

third party is, or may be, liable to the defendant/third-party plaintiff for all or part of the claim against it. In this case, the question is whether there is any viable claim that the Bank could be liable to Howard (father) for all or part of his claims against Keith (son). The Bank is not specifically referenced in Count X, and the gist of the Third-party Complaint as to the Bank is that Carlson engaged in transactions at the Bank which financially harmed Keith and his companies. The Third-party Complaint simply does not state any plausible claims for contribution or indemnity against the Bank. Therefore, I also recommend that Count X be dismissed as to the Bank.

### E.    Rule 9(b)'s Particularity Pleading Requirement

Finally, the Court considers API/Dubuques' claim that Counts VIII and IX of the Third-party Complaint are not adequately pled. They argue that both Counts VIII and IX fail to overcome the heightened pleading standard applicable to them because they lack the requisite specificity and "particularity." (ECF No. 61-1 at p. 9). Third-party Plaintiffs counter that their negligence claim is not fraud-based, thus they assert that the heightened pleading standard for fraud-based claims is not applicable. (ECF No. 67 at p. 14). They also contend that even if the heightened pleading standard applies, they have satisfied it.

After reviewing the Complaint and the arguments made by the parties, I find the API/Dubuques' argument unpersuasive. Third-party Plaintiffs convincingly argue that the Complaint pleads that the American Pride Defendants deposited checks made payable to Atlantic Abatement into its own bank accounts. Third-party Plaintiffs note that American Pride and Atlantic Abatement are separate entities that "did not perform any work together" that there would be "no basis for Atlantic Abatement to pay monies to American Pride" and that American Pride Defendants have "knowledge of such transfers and were negligent" in allowing the transfers to

continue.  Id.  Based upon the allegations contained in the Complaint, fraud does not underlie the negligence claim, thus Rule 9(b)'s particularity requirement does not apply.  However, even if the heightened pleading standard applied to Counts VIII and IX, I find that the facts underlying these claims, See ECF No. 67 at pp.18-21, are sufficient to overcome this dismissal challenge.

**Conclusion**

For the foregoing reasons, I recommend that the Bank's Motion to Dismiss (ECF No. 59) be GRANTED; and that Carlson's Motion to Dismiss (ECF No. 60) and API/Dubuques' Motion to Dismiss (ECF No. 61) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 25, 2021